FREDERICK DIEBOLDT, an Infant, by MARGARET DIEBOLDT, his Guardian ad Litem, Respondent, *v.* UNITED STATES BAKING COMPANY, Appellant.

*Safeguards about elevators — chapter 409 of the Laws of 1886, as amended by chapter 462 of the Laws of 1887, is a public statute.*

Chapter 409 of the Laws of 1886, as amended by chapter 462 of the Laws of 1887, is a public statute, of which judicial notice will be taken, and is properly presented and considered as evidence upon the trial of an action, although not specifically set forth in the complaint.

It is not the absolute duty of the owner, agent or lessee of a manufacturing establishment to provide the safeguards directed by the statute to be furnished in regard to elevators running in such establishments, but the omission to provide such safeguards is evidence for the jury on the question of negligence, upon the trial of an action brought to recover damages caused by personal injuries alleged to have been sustained by reason of an accident resulting from the failure to provide better safeguards in or about such an elevator.

APPEAL by the defendant, the United States Baking Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 1st day of March, 1894, upon the verdict of a jury rendered after a trial at the Erie Circuit, and also from an order entered in said clerk's office on the 1st day of March, 1894, denying the defendant's motion for a new trial made upon the minutes.

*C. S. Crosser,* for the appellant.

*Wallace Thayer,* for the respondent.

BRADLEY, J. :

The action was brought to recover damages for personal injuries of the plaintiff, alleged to have been occasioned by the negligence of the defendant. The plaintiff had for some months been in the service of the defendant at the time of his injury, which occurred on June 11, 1892. He was then seventeen years of age. At the commencement of the week ending with that day he had been put into the service of operating the elevator, which then was run between the basement and the fifth floor of the building, with directions not to leave it.

On that day, on coming down on the elevator from above, the plaintiff, at about five-thirty o'clock P. M., stopped at the fourth floor, left it to get his lunch basket, which was in the front room there, and on his return to take the elevator, supposing it remained there, he stepped into the shaft and fell thirty-three feet on to the elevator as it was proceeding down, and received the injury complained of. In his absence from it, and without his knowledge, the defendant's engineer had taken the elevator and was on his way down with it when the plaintiff stepped into the shaft. The alleged negligence of the defendant is founded upon the statute which provides that : " It shall be the duty of the owner, agent or lessee of any manufacturing establishment where hoisting shafts or well holes are used, to cause the same to be properly and substantially inclosed or secured, if in the opinion of the inspector it is necessary to protect the life or limbs of those employed in such establishments. It shall also be the duty of the owner, agent or lessee to provide or cause to be provided such proper trap or automatic doors, so fastened in or at all elevator ways as to form a substantial surface when closed, and so constructed as to open and close by action of the elevator in its passage, either ascending or descending." (Laws 1886, chap. 409, § 8, as amended by Laws 1887, chap. 462, § 2.) At the fourth floor there were folding or double doors into the shaft on the north and south sides of it, which could be pushed open from the inside and pulled together and shut on entering it. This constituted the method provided for inclosing the shaft at this and the

other floors. It does not appear that the attention of the Factory Inspector had been called to this elevator shaft, although the establishment had been in operation a long time, and its employees exceeded 100 in number. There would ordinarily be no danger from the outside if the doors in the shaft were kept closed. But the protection contemplated by the statute was not provided by the defendant, and if automatic doors there referred to had been furnished the accident in question would have been prevented.

This is not held to be an absolute duty. But when the case was here for review on a former trial it was held that the omission to provide better protection against danger and accident was evidence of negligence on the part of the defendant for the consideration of the jury. (*Dieboldt* v. *U. S. Baking Co.*, 72 Hun, 403.) The statute is a public one, of which judicial notice will be taken, and, therefore, it is properly presented and considered as evidence although not specifically alleged in the complaint. The main question, therefore, for consideration is whether the fact that the plaintiff was free from contributory negligence was fairly established by the evidence. He was well informed of the situation. He knew that any person getting on the elevator could operate it.

When he opened the doors of the shaft and went after his lunch basket the plaintiff intended to return and proceed down on the elevator. He says that his basket was only about ten feet away from the shaft, and that the time he occupied in getting his basket and returning to the shaft was only one minute. In this he was contradicted by the testimony of other witnesses to the effect that he remained on the floor five or ten minutes. But upon his evidence it is assumed that the jury were permitted to find that he went directly to his lunch basket and in about the time mentioned by him returned with it to take the elevator. The engineer who had taken it says he entered the front door of the shaft. The evidence on the part of the plaintiff tends to prove that he did not do so. There was another door on the other or south side where he could have entered.

The plaintiff on this review is entitled to the benefit of the fact which the evidence on his part tended to prove, that the engineer entered the south door of the shaft. He evidently did not see the engineer enter the shaft, and when he went to take the elevator he

supposed it remained where he had left it, and by that belief was governed his action which resulted in his fall. He says that when near the shaft he looked to see if the elevator was there and saw nothing there. He certainly could not see the elevator. It had been taken away. He testified that he came within a foot and a half of the elevator well with his face towards it, looked into it, but could see nothing; that then he turned around, said good night to Sophia Luce, backed in, took hold of the doors to shut them and fell down the shaft. He adds that the room was light, but that the light did not shine so that he could see into the shaft. His testimony that there were then no windows open in the shaft above the fifth floor, although contradicted by that of several witnesses, will be here treated as the fact. But his evidence to the effect that it could not be seen whether the elevator was at the fourth floor with the doors open at the time he entered there to take it and fell, is decidedly against the weight of the evidence. That was a front room. It had to furnish light fifteen windows on the north, east and west sides. It also had two skylights of surface dimensions of sixteen by twenty-one feet each. The corner of one of the skylights was about seven feet from the elevator, and that of the other about twelve feet from it. The elevator was at the south side of the room, and the doors of the shaft on the north side of it were five and a half feet wide and seven and a half feet high. The day at the time in question was clear and bright. There was no obstruction over the front room of the fourth floor to obscure the effect of the skylights. In view of the situation it would seem that, at the time in question, the light entering the room was such, with the front doors of the shaft open, as to enable one to see whether or not the elevator, about eight feet square, was at that floor. And such is the effect of the evidence of all the several witnesses who testified on the subject other than the plaintiff. He says the doors when he approached the shaft were open only one foot and six inches. While that opening admitted less light than would have been received through a wider opening of the doors, the evidence on the part of the defendant is that it was light inside the shaft there with the doors open only eighteen inches, and this was somewhat shown by photographic illustrations with light entering the shaft only from this front room of the fourth floor. The plaintiff says when he

came down to the fourth floor on the occasion, and before he left the elevator, he looked at his watch and saw that it lacked seven minutes to five-thirty p. m.

The conclusion is fairly required by the weight of the evidence that, if the plaintiff had taken reasonable observation before he entered the shaft, he would have seen that the elevator was not there. But, supposing that it was where he had left it shortly before, he assumed that it remained there. He had some reason to think so as he had seen no one go into the shaft. The question, therefore, is whether the plaintiff, under the circumstances, without any imputation of negligence on his part, was permitted to rely solely upon his belief that the elevator then remained at the fourth floor. It was then after quitting time for the employees operating the machinery, and it appears that the engineer had on some other occasions after such time taken the elevator from the upper floors where it had been left during the week while the plaintiff had been running it. The fact that the movement of the elevator from where he left it was not necessarily dependent upon him, furnished a reason for him to use some care to ascertain if he could safely step into the shaft before he did so. By swinging open the doors and looking he would have seen that the elevator was gone. If his approach or entrance at the doors, only partially open, so obscured the light in the shaft as to render it difficult to see the situation there, that was a reason for opening them wider if he desired to see whether it was safe to proceed. This he did not do, although he says he looked in to see whether the elevator was there or not, and without seeing whether or not it remained there, he backed into the shaft as before mentioned.

This was not reasonably precautious for his own protection. He was familiar with the situation and well advised of the danger to result from stepping into the shaft without having the support of the elevator.

The situation in the present case is distinguishable from that of *McRickard* v. *Flint* (114 N. Y. 222) in the fact that there the plaintiff had no knowledge of the hatchway which was within one step of the threshold of the open door which he entered.

In the case at bar the opportunity for some one else to take away the elevator was some reason for the plaintiff to see that it had not been done before he entered the shaft.

We think the verdict was against the weight of evidence. And for that reason the judgment and order should be reversed and a new trial granted, costs to abide the event.

Dwight, P. J., Lewis and Haight, JJ., concurred.

Judgment and order appealed from reversed and new trial granted, with costs to abide the event.